200 N.J. Super. 269 (1984)
491 A.2d 59
ALLSTATE INSURANCE COMPANY, PLAINTIFF,
v.
SONDRA ALTMAN & ROBERT ALTMAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided December 10, 1984.
*271 Guy W. Killen for plaintiff (Green and Lundgren, attorneys).
Carl Ahrens Price for defendants.
DAVIS, J.S.C.
Allstate Insurance Company (Allstate), the plaintiff herein, has filed a motion for summary judgment seeking a declaration from this court that the filing of a demand for arbitration by Sondra and Robert Altman (Altman), defendants herein, is time-barred by the six-year period of limitation. Before this issue can be addressed, it is necessary to review the terms of the insureds' contract to determine whether the definition of an uninsured vehicle is consistent with our legislative and judicial policy.

I
The Altmans, who resided in New Jersey, were involved in a vehicular accident in Philadelphia, Pa., on January 17, 1972 with a cab owned by Yellow Cab Company of Pennsylvania (Yellow Cab). At the time of the accident, Yellow Cab was self-insured and the Altmans were insured by Allstate. Its policy had the normal uninsured motorists provision. The complaint for personal injuries was timely filed in the Pennsylvania state court; however, the litigation was terminated because Yellow Cab, which subsequently filed a petition in bankruptcy, was declared bankrupt in 1981.
*272 On October 13, 1981, the Altmans instituted arbitration proceedings under the uninsured motorists provisions of the policy. Allstate refused to arbitrate. In May 1983, the Altmans filed a demand for arbitration with the American Arbitration Association. This matter was transferred to New Jersey with the consent of both counsel. The declaratory judgment matter was filed on August 29, 1983.
That portion of the insured's policy which sets forth the general definition of an uninsured vehicle reads as follows:
"uninsured highway vehicle" means:
(a) a highway vehicle ... with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; (emphasis supplied) or
(b) "uninsured highway vehicle" shall not include:
(ii) a highway vehicle which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or similar law, ....
There is no dispute between the parties that Yellow Cab was self-insured under the laws of the Commonwealth of Pennsylvania, and no dispute that it was declared bankrupt before the personal injury action could be resolved. Allstate, however, insists that it should not be liable under its policy because a policy, as such, for Yellow Cab had not been written, and accordingly, there was not a denial of coverage under a policy as these terms are expressed in subparagraph (a) of the policy, supra.
Inferentially, Allstate also argues that even if this court were to conclude that a self-insurer's certificate is equivalent to the issuance of a policy of insurance, even though issued in Pennsylvania under a different philosophy, this court should not on these facts declare that coverage exists. The carrier, by argument, simply states that the policy language of paragraph (b) specifically excludes the possibility of self-insurers being considered as uninsured under any law.
This position creates an anomaly whereby two insureds could have the same policy of insurance, both could have similar *273 accidents in which both vehicles with which they collided were uninsured, but one recovers under the uninsured motorists provisions of his policy and the other does not, solely because the other uninsured vehicle was originally self-insured. No case has been submitted in which the policy language of paragraph (b) was in issue. Consequently, an examination must be made of legislative and judicial policies regarding restrictive language in insurance policies that may contravene legislative intent.

II
This court recognizes that there may be a difference in the manner in which the Commonwealth of Pennsylvania treats its self-insureds. The greater interest to be reviewed, however, is that of insureds who have complied with the mandatory insurance laws of this State by purchasing insurance and thereby bargaining for protection from others who turn out not to have any coverage.
Under our laws, N.J.S.A. 39:6-52, any person in whose name more than 25 motor vehicles are registered, may qualify as a self-insurer by obtaining a certificate of self-insurance which will be issued if it can be shown that the owner is capable of paying judgments rendered against him. There is no dispute that Yellow Cab would meet this definition.
Although such a certificate may not be considered a policy of insurance in Pennsylvania, it is clearly considered as such in this State. Transport of New Jersey v. Watler, 79 N.J. 400 (1979). Watler further held that the uninsured motorist coverage, required of all motor vehicle insurance policies issued pursuant to N.J.S.A. 17:28-1.1, is incorporated within this "policy" of self-insurance. Additionally, our courts have held that a self-insurer should not be relieved of any obligation in regard to uninsured motorists coverage that would be imposed upon an insurer which issues the customary policy of insurance as required under N.J.S.A. 17:28-1.1. Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979). Notwithstanding these judicial *274 expressions of legislative intent, Allstate insists that the Altmans are not covered because their policy of insurance specifically excludes accidents with self-insured vehicles.
Any attempt by an insurer to dilute or diminish statutory provisions applicable to its contract of insurance is contrary to public policy. Pasterchick v. Ins. Co. of North America, 150 N.J. Super. 90, 91 (App.Div. 1977). New Jersey's legislative policy for the protection of victims of automobile accidents is a particularly strong one; Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507, 512 (1960), therefore, to maintain this policy, the restrictive language of sub-paragraph (b) of the instant policy must be declared void.

III
Having interpreted the language of the policy in a manner consistent with legislative policy, there remains the issue of whether the plaintiffs' right of recovery is barred by any period of limitation. The parties do not seriously dispute the applicability of the six-year period of limitation since it is clear that this matter arises out of the arbitration clause of the insurance contract. Selected Risks Ins. Co. v. Dierlof, 138 N.J. Super. 287 (Ch.Div. 1975). What is at issue is the time that the statute of limitation is to commence.
Allstate contends that the period of limitation commenced to run as of January 17, 1972, the date of the accident. In support of this proposition, it refers to the time-honored goals of litigation repose as set forth in Fidelity Deposit Co. of Md. v. Abagnale, 97 N.J. Super. 132, 139 (Law Div. 1967), and State v. Standard Oil Co., 5 N.J. 281, 295 (1950). The Altmans contend, however, that the period of limitation did not commence to run until Yellow Cab was declared bankrupt, which was in 1981, and Allstate had rejected their demand for arbitration.
In each case involving the application of the statute of limitations, the equitable claims of opposing parties must be identified, evaluated and weighed. Lopez v. Swyer, 62 N.J. 267, 274 (1973) and Tevis v. Tevis, 79 N.J. 422 (1979).
*275 This court does not reject the policies espoused in the cases cited by Allstate; they are accepted. The manner in which Allstate seeks to have this court utilize them, however, is premised upon the assumption that the Altmans' claims are stale. The facts of this case clearly show that the Altmans quickly moved under the terms of their policy once Yellow Cab was declared bankrupt. Prior to that time they had timely filed their personal injury action but were stayed from proceeding any further because of Yellow Cab's filing of a petition in bankruptcy. None of the delay, therefore, is attributable to the Altmans.
It would appear that the Altmans' claims did not accrue until Allstate rejected their demand for arbitration. By using basic contract principles, it becomes clear that matters thereunder do not accrue until there is a breach. The breach in this case was when Allstate denied the claim for uninsured motorists coverage. For a similar result, see Allstate Co. v. Spinelli, 443 A.2d 1286 (Del.S.Ct. 1982).
Accordingly, Altmans' demand for arbitration is not time-barred, and any restraints heretofore imposed are hereby dissolved. Allstate's request for summary relief is denied.