(915 P.2d 161)

No. 73,861

JAMES M. EIDEMILLER, *Appellant,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee.*

Opinion filed April 26, 1996.

*David T. Greis, Gregory J. Abella,* and *William H. Pickett,* of William H. Pickett, P.C., of Kansas City, Missouri, for appellant.

*Douglas M. Greenwald* and *Clifford T. Mueller,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before GERNON, P.J., GREEN, J., and PHILIP L. SIEVE, District Judge, assigned.

GREEN, J.: This litigation involves a claim for underinsured motorist coverage by the insured, James M. Eidemiller. Eidemiller claimed that he was entitled to underinsured motorist coverage under three separate insurance policies with State Farm Mutual Automobile Insurance Company (State Farm). State Farm moved for summary judgment, arguing that the stacking of the insurance policies is prohibited by K.S.A. 40-284(d). The trial court agreed and granted summary judgment in favor of State Farm. On appeal, Eidemiller contends that the trial court erred in holding that the statute prohibited the stacking of the policies. We agree.

On December 26, 1988, Eidemiller was a passenger in a car driven by Edward T. Musick. After Musick lost control of his car, he slammed into another car. From that impact, Musick collided with a second car. The second car was operated by John M. Guzan II. Eidemiller suffered injuries from the collisions. Later, Eidemiller settled his liability claim against Musick for Musick's policy limits of $25,000. He also settled his liability claim against Guzan for $5,500.

State Farm insured Eidemiller under three separate automobile insurance policies. The underinsured motorist limits of each policy matched exactly the liability limits contained under Musick's and Guzan's policies.

Eidemiller notified State Farm that the liability settlements from Musick and Guzan had failed to adequately compensate him for his injuries. As a result, Eidemiller told State Farm that he was making an underinsured motorist claim based on the combination of the three State Farm policies. When State Farm denied Eidemiller's claim, Eidemiller filed this breach of contract suit on August 24, 1994.

Anti-Stacking Statute

Eidemiller argues that the trial court improperly granted summary judgment because the anti-stacking provisions of K.S.A. 40-284(d) do not prevent the stacking of his insurance coverage under the three State Farm policies. Eidemiller argues that because State Farm failed to include the anti-stacking language in its three insurance contracts, the language should not automatically be read into the contracts.

On the other hand, State Farm argues that the statutory language of 40-284(d) is unambiguous and that the legislature clearly prohibited stacking in all circumstances.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). Here, the facts are not in dispute. We are asked to determine whether the anti-stacking provisions of 40-284(d) are automatically read into an insurance contract when an insurance

company fails to include such provisions in the contract. Because this is a question of law, the trial court correctly determined that this issue is ripe for summary judgment.

The 1981 amendments to 40-284 addressed "stacking" of underinsured motorist coverage. Stacking is "the right to recover on two or more policies in an amount not to exceed the total of the limits of liability of all policies up to the full amount of the damages sustained." *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 608, 549 P. 2d 1354 (1976). K.S.A. 40-284(d) prohibits the stacking of insurance coverage:

> "Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident."

Whether 40-284(d) is automatically read into an insurance policy when anti-stacking provisions are not included in the contract has not been addressed by the Kansas appellate courts. But the Eighth Circuit Court of Appeals addressed this issue in *Walker v. State Farm Mut. Auto. Ins. Co.*, 973 F.2d 634 (8th Cir. 1992). In *Walker*, the appellants sought underinsured motorist benefits from State Farm. They argued that their underinsured motorist coverage should be the aggregate of the total amount of the underinsured motorist coverage they had on six different vehicles. The court noted that "stacking of underinsured motorist coverage, prior to 1981 amendments, was presumed under Kansas law. *Davis v. Hughes*, 229 Kan. 91, 622 P.2d 641, 648 (1981); *Welch v. Hartford Casualty Ins. Co.*, 221 Kan. 344, 559 P.2d 362, 367 (1977)." 973 F.2d at 637.

In summarizing the arguments, the *Walker* court stated:

> "The Walkers admit that the 1981 amendment eliminated automatic stacking in Kansas, but claim that the amendment only gave insurance companies the right to eliminate stacking. Because nothing in their insurance policies specifically eliminates stacking, the Walkers argue that § 40-284(d) should not automatically be read into their insurance contracts. The Walkers argue that because this new provision is for the benefit of insurance companies, State Farm must explicitly add anti-stacking language to their policies for § 40-284(d) to have effect. The Walkers claim that their interpretation prevents insurance companies from 'sand-

bagging' their customers by not adding the anti-stacking language to the policies, but then forbidding stacking.

"State Farm argues that Kan. Stat. Ann. § 40-284(d) forbids stacking even where the policy is silent on the issue. State Farm argues that the language 'shall be limited' means that § 40-284(d) is not an optional provision, but a mandate." 973 F.2d at 637.

The *Walker* court agreed with State Farm. Concluding that the Kansas legislature intended that 40-284(d) apply to all insurance contracts, the court stated:

"Section 40-284(d) clearly states that underinsured motorist coverage 'shall be limited' to the maximum of one policy. This mandatory language contrasts with Kan. Stat. Ann. § 40-284(e) (emphasis added) which states that '[a]ny insurer *may provide* for the exclusion or limitation of coverage' and then provides a list of terms. Section 40-284(e) is clearly optional and for the exclusions to apply, the exclusion must be written into the insurance policy. Therefore, the Kansas legislature clearly intended § 40-284(d) to be mandatory or the legislature would have used the optional language used in § 40-284(e)." 973 F.2d at 637-38.

Although the Eighth Circuit's analysis of K.S.A. 40-284(d) is consistent with Kansas rules of statutory construction, the court's analysis ignores Kansas precedent. That precedent requires that insurance contracts be strictly construed against insurance companies which prepare insurance contracts and in favor of the insured. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 232, 597 P.2d 1080 (1979). This general rule and a Kansas case support Eidemiller's contention that statutory provisions for the benefit of the insured are read into insurance contracts, while those for the benefit of insurance companies must be expressly included.

In *Howard v. Farmers Ins. Co.*, 5 Kan. App. 2d 499, 619 P.2d 160 (1980), *rev. denied* 229 Kan. 670 (1981), an insurer failed to include favorable statutory provisions involving subrogation rights in the insurance contract. The trial court reasoned that the statute providing the statutory benefit was clear and unambiguous and granted the insurer summary judgment. In determining that the insurance policy did not necessarily incorporate the statutory provisions at issue, we reasoned that the policy as written was ambiguous. As a result, we reversed the trial court, concluding that the inconsistency of contract language should be resolved in favor of

the insured because the insurer was the preparer of the policy. The *Howard* court stated:

" 'It is true that, where the statute makes a provision for the benefit of the insured, the parties to the insurance contract cannot contract away that right, since that would enable the insurer, by properly drafting its policy, to nullify the statute. But the proviso in question was enacted for the benefit of the company which it can insist upon or waive as it chooses. . . . When . . . the insured and defendant entered into this contract, the statute wrote itself into and formed a part of the contract, and the cause of action is not strictly created by the statute, but by the contract containing the statute as one of its provisions. No law or rule of public policy requires the company to be protected to the extent that it cannot waive a requirement imposed on the insured as to the time in which notice is to be given. A statutory right or benefit given for its protection can be waived the same as any other right.' " 5 Kan. App. 2d at 504 (quoting *Chandler v. Insurance Co.*, 180 Mo. App. 394, 398-99, 167 S.W. 1162 [1914]).

The *Howard* court also quoted liberally from *Conte v. Yorkshire Ins. Co.*, 5 Misc. 2d 670, 163 N.Y.S.2d 28 (1957). This case held that when a statutory provision limiting the institution of an action against an insurer to a 12-month period after an accident was omitted from a policy due to a printer's error, the insurer was estopped from relying on that statute of limitations. The *Conte* court stated:

"The history of statutory insurance clearly indicates that standard policies were made obligatory upon insurance companies to protect ingenuous insureds against the refinements and legalisms devised by the companies. Whenever the Legislature stepped into this area its purpose was to afford the insured more protection and less obfuscation [citation omitted]. We are on firm ground then when we say that primarily, standard policies are for the safeguarding of policy holders.

"Of course, if for any reason at all, apparent or ulterior, an insurer chooses to waive benefits conferred by the statutes providing for uniform policies, this may be done." *Conte*, 5 Misc. 2d at 671.

See *Fredericks v. Farmers Rel. Ins. Co. of N.J.*, 80 N.J. Super. 599, 194 A.2d 497 (1963); *Homestead Invest., Inc. v. Foundation Reserve Ins. Co.*, 83 N.M. 242, 490 P.2d 959 (1971); *Becker-Fineman Camps, Inc. v. Public Service Mut. Ins. Co.*, 52 App. Div. 2d 656, 382 N.Y.S.2d 122 (1976).

Adopting the reasoning of the *Chandler* and *Conte* courts, the *Howard* court stated:

"This line of cases is an example of a statute not being read into a policy because the statute conferred a benefit on the insurance company, rather than the insured.

"As was stated in 44 C.J.S., Insurance § 302, pp. 1219-20:

'The parties to the insurance contract cannot waive an applicable statutory provision, that is, a statutory provision for the benefit of insured cannot be contracted away, but it is held that a provision for the benefit of the company may be insisted on or waived by it as it chooses.' " 5 Kan. App. 2d at 505.

The *Howard* court noted that the applicable statutory provisions used the mandatory "shall" language, as does 40-284(d). But the court found that insurance contracts, which are drafted by the insurer, should be strictly construed against the insurer. Therefore, despite mandatory language, statutory provisions benefiting the insurance company that are not included in the contract are not automatically read into an insurance contract.

State Farm, however, argues that *Howard* is distinguishable from the present case. It argues that the language used in the automobile liability policy in *Howard* arguably waived the insurer's subrogation rights. State Farm argues that its policies lacked this kind of ambiguity. Finally, State Farm argues that had it expressly included in its policies language that an insured could recover under multiple uninsured motorist coverages for a single accident, Eidemiller might be able to argue that State Farm waived K.S.A. 40-284(d).

Nevertheless, the reasoning of the *Howard* court, as well as the cases and secondary authority cited therein, belie such a limited application. Both *Chandler* and *Conte* involve statutory benefits created for the insurer which were *absent* from the contract. The *Chandler* and *Conte* courts held that an insurer by its actions could either waive or be estopped from claiming those statutory benefits.

Finally, Eidemiller argues that the State Farm policies do not expressly warn an insured that recovery under multiple uninsured motorist coverages is prohibited. Eidemiller further argues that had he known he could not stack his multiple coverages and could only collect under one of the policies, he might have purchased additional coverage under one policy. As a result, he argues that State Farm should not be permitted to receive and keep premiums for coverage it is now trying to bar through the use of 40-284(d). We agree.

Although distinguishable from our case, the Third Circuit Court of Appeals decided a case which is helpful. In *West American Ins. Co. v. Park*, 933 F.2d 1236 (3d Cir. 1991), the insurer, West American, argued that its insured, Park, was prohibited by Pennsylvania statute from stacking coverage under two separate car insurance policies. As in the instant case, West American had drafted the policy and collected premiums for the statutorily prohibited coverage. Notably, West American's policy was more egregious than in the present case, as it not only failed to refer to the statutory prohibition on stacking but expressly provided for the prohibited coverage. Although the Pennsylvania statute differs from K.S.A. 40-284(d), it is similar in some respects to K.S.A. 40-284(a). The Pennsylvania statute reads:

"The [uninsured/underinsured motorist] coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter *but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.*" (Emphasis added.) 75 Pa. Cons. Stat. Ann. § 1736 (Purdon Supp. 1990).

However, the *West American* court's analysis is uniquely applicable to the instant case because the court applied the principles of equitable estoppel.

Borrowing from other Pennsylvania courts, the *West American* court defined equitable estoppel as " 'a doctrine of fundamental fairness intended to preclude a party from depriving another of a reasonable expectation, when the party inducing the expectation knew or should have known that the other would rely to his detriment upon that conduct. [Citation omitted.]' " 933 F.2d at 1239 (quoting *Straup v. Times Herald*, 283 Pa. Super. 58, 71, 423 A.2d 713 [1980]).

The court then found that by collecting premiums for underinsured motorist coverage under both policies, West American had led Park to believe that she could recover under both policies. Expressly recognizing that allowing recovery might "provide Park with more underinsured motorist protection than the legislature intended her to have," the court held that West American was estopped from arguing that the statute prohibited the stacking of Park's coverage. 933 F.2d at 1239. In its conclusion, the court

stated: "We are confident that the Pennsylvania Supreme Court would not allow an insurer to challenge the legality of a policy which it wrote, for which it collected premiums, and on which it gave the insured every reason to rely." 933 F.2d at 1240.

Finally, one should consider the insurance policy in the light of a layperson. Unlike a layperson, an insurance company is fully aware of statutory restrictions on coverage:

*"Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies.* Trusting the language of their policies, laypersons will not seek coverage they think they have. . . . [U]nlike laypersons, insurance companies are fully capable of knowing about statutory restrictions on coverage and of incorporating the restrictions in the language of *their policies." Utah Property & Casualty Ins. Etc. Assn. v. United Services Auto. Assn.,* 230 Cal. App. 3d 1010, 1021, 281 Cal. Rptr. 917 (1991). (Emphasis added.)

We conclude that because State Farm declined to incorporate the anti-stacking language of 40-284(d) into its policies, State Farm is equitably estopped from using that statute to bar Eidemiller from stacking the three State Farm insurance policies.

## Offset Provisions

Next, although State Farm concedes that its policies did not contain any express anti-stacking clause, it argues that each policy contains language that would preclude underinsured motorist coverage in this situation.

First, State Farm argues that its policies' definition of an "underinsured" motorist is identical to the statutory definition under the underinsured motorist statute. See K.S.A. 40-284(b). This provision limits the victim's recovery through underinsured motorist coverage to the amount by which the victim's underinsured motorist coverage exceeds the tortfeasor's liability coverage. For example, if the victim's underinsured motorist coverage is $50,000 and the tortfeasor's liability coverage is $50,000, the victim is ineligible for underinsured motorist benefits.

Second, State Farm argues that its policies state that the maximum "underinsured" motorist benefits it will pay any one insured is the lesser of:

"(1) the difference between the 'each person' limit of liability of this coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or

"(2) the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury."

State Farm argues that because the difference between the $25,000 underinsured motorist coverage under each of its policies and the $25,000 that Eidemiller received from the tortfeasor Musick is zero, Eidemiller is not entitled to any underinsured motorist benefits under any of the State Farm policies.

Those policy provisions, however, described in the preceding two paragraphs, are called offset provisions. These offset provisions prohibit the stacking of the tortfeasor's liability coverage onto the victim's underinsured coverage. But because neither offset provision expressly prohibits Eidemiller from stacking the three State Farm policies, State Farm's arguments must fail.

Finally, State Farm argues that any underinsured motorist coverage furnished by its policies was secondary to the primary coverage. It further argues that the vehicle driven by Musick furnished the primary coverage. As a result, State Farm argues that its coverage, at most, was excess to the primary coverage, but only in the amount which exceeded the primary coverage. Next, State Farm argues that because the primary underinsured motorist coverage was identical to the underinsured motorist coverage furnished by State Farm under each of its policies, no additional underinsured motorist coverage existed under any of the State Farm policies. This argument, however, is flawed. Eidemiller never made an underinsured motorist claim against Musick's insurance company. As a result, this argument must also fail.

In summary, we conclude that because the preceding offset provisions do not clearly and unambiguously preclude stacking of coverages, Eidemiller should be permitted to stack the three State Farm insurance policies.

Statute of Limitations

Finally, we must consider a statute of limitations question which the trial court declined to address. Both parties agree that the 5-

year contract statute of limitations period of K.S.A. 60-511(1) applies to claims for underinsured motorist insurance benefits. See *Van Hoozer*, 219 Kan. at 611. But the parties disagree as to when the limitations period commences.

In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The test to determine when an action accrues is when the plaintiff could have first filed and prosecuted the action to a successful conclusion. *Lindenman v. Umscheid*, 255 Kan. 610, Syl. ¶ 3, 875 P.2d 964 (1994).

State Farm contends that "the most logical accrual date for statute of limitations purposes is the date of the accident." State Farm relies upon *Brown v. USAA Cas. Ins. Co.*, 17 Kan. App. 2d 547, 840 P.2d 1203, *rev. denied* 252 Kan. 1091 (1992), where we concluded that an insured seeking underinsured motorist benefits was not precluded from seeking such benefits by policy language requiring exhaustion of other policies. In *Brown*, the insured failed to sue the tortfeasor before the 2-year statute of limitations had run. State Farm denied a claim for underinsured benefits based upon the "exhaustion clause" of the policy. On appeal, this court found that the exhaustion provision was unenforceable and contrary to the public policy because it sought to limit coverage mandated by statute. The court emphasized that Brown did not have to sue the tortfeasor as a prerequisite to recovery of underinsured motorist benefits. Brown needed only to establish fault on the part of the tortfeasor and the extent of damages. *Brown* offers tenuous support, at best, for the commencement of the statute of limitations at the time of the accident.

Eidemiller argues that the statutory period is triggered by breach of the insurance contract. He argues that such an interpretation is consistent with a contract statute of limitations. He also argues that before an insured can determine if he or she has an underinsured motorist claim, the insured must first determine if his or her damages exceed the liability coverage of the tortfeasor. In *Haas v. Freeman*, 236 Kan. 677, 682, 693 P.2d 1199 (1985), our Supreme Court, in noting the differences between uninsured and underinsured coverage, stated that underinsured coverage is an unresolved

issue until the amount of damages is finally determined. On the other hand, the lack of insurance is known soon after the accident. This case lends support to Eidemiller's contention for when a claim for underinsured motorist benefits becomes ripe.

Although neither party directs this court to any particular case law, support for both positions exist. In *Blutreich v. Liberty Mut. Ins. Co.*, 170 Ariz. 541, 826 P.2d 1167 (1992), the sole issue on appeal was: "When does the statute of limitations begin to run on a cause of action for benefits under an underinsured motorist provision of an automobile insurance policy?" 170 Ariz. at 542. In that case, the Blutreichs sued their insurer for underinsured motorist benefits. The trial court ruled that the statute of limitations had run and entered judgment in favor of the insured. Citing to a leading treatise, the *Blutreich* court stated:

" 'There is no clear basis for stating when a statute of limitations begins to run in regard to uninsured motorist insurance claims. In most insurance policies, there are no relevant provisions and there has been almost no discussion of this matter in either the appellate cases or the secondary literature. It seems likely that in many instances the date of the accident will be used by the courts. However, it also seems probable that in some contexts courts will use an event related to the insurance relationship, such as a demand for payment, the rejection of a claim, or the rejection of a request for arbitration. Given the almost uniform view among the applicable judicial precedents that uninsured motorist insurance claims are subject to the contract statute of limitations, it would be reasonable for courts to focus on the occurrence which constitutes a "breach of the contract" by the insurer (rather than the occurrence of the event giving rise to the contractual claim for insurance benefits).' "

A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 7.12 (2d ed. 1990) (footnotes omitted). ". . . [T]he overwhelming majority of courts that had addressed the question had concluded that the limitations period begins to run upon some event constituting a breach by the insurer. *See, e.g., Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286 (Del. 1982) (no justiciable controversy until insurer denied insured's claim for coverage benefits and so informed insured); *Norfleet v. Safeway Ins. Co.*, 144 Ill. App. 3d 838, 98 Ill. Dec. 598, 494 N.E.2d 720 (1986) (cause of action for uninsured benefits accrued when insurer failed to comply with arbitration demand); *Yingling v. Phillips*, 65 Md. App. 451, 501 A.2d 87 (1985)

(breach of contract action against insurer accrued when insurer denied coverage—statute of limitations began to run when insured had notice that insurers disclaimed liability); *Jacobs v. Detroit Auto. Inter-Insurance Exchange*, 107 Mich. App. 424, 309 N.W.2d 627 (1981) (where demand for arbitration is condition precedent to right to sue for uninsured motorist benefits, cause of action accrued when insurer refused to submit to arbitration); *Spira v. American Standard Ins. Co.*, 361 N.W.2d 454 (Minn. App. 1985), [*rev. denied* March 29, 1985] (absent express limitation in policy restricting time for bringing uninsured motorist claim, contract statute did not begin to run until plaintiff's identifiable claim for uninsured benefits was rejected); *but see O'Neill v. Illinois Farmers Ins. Co.*, 381 N.W.2d 439 (Minn. 1986) (where action is to *imply* underinsured motorist benefits in an insurance policy and to recover those benefits under the policy as amended, six-year contract statute begins to run on date of accident). *See also Allstate Ins. Co. v. Altman*, 200 N.J. Super. 269, 491 A.2d 59 (1984) (action for breach of contract accrued when insurer breached by denying claim for uninsured motorist coverage); *Alvarez v. American Gen'l Fire & Casualty Co.*, 757 S.W.2d 156 (Tex. App. 1988) (claim for uninsured motorist coverage accrued when insurer denied liability for claim and not at time of accident giving rise to claim); *Safeco Ins. Co. v. Barcom*, 112 Wash. 2d 575, 773 P.2d 56 (1989) (contract statute of limitation begins to run against an insured on the date of the breach of the contract of insurance by the insurer)." 170 Ariz. at 543-44.

The *Blutreich* insurer argued that the statute of limitations should begin to run at the time of the accident to maintain "certainty and uniformity." However, the court rejected this argument, observing that "the insurer is in a position to protect itself against uncertainty and variability by including appropriate time limitations in the insurance contract." 170 Ariz. at 545.

As stated above, Kansas follows the majority of states in holding that the limitations period that applies to an action for benefits under an underinsured motorist provision is the period for actions founded upon written contracts. Therefore, contract principles

should be used to determine when the statutory period begins to run. Although there is support for commencing the statute of limitations period either at the time of the accident or at the time of some breach by the insurer, the current trend is to look to a breach of the contract to determine when the statute begins to run.

In *Waugh v. American Casualty Co.*, 190 Kan. 725, 731, 378 P.2d 170 (1963), our Supreme Court, discussing the difference between a liability and an indemnity policy, stated: "The policy under consideration is one insuring against liability, rather than one of indemnity, and the coverage attaches when the liability attaches. A cause of action accrued to the insured when the insurer denied liability."

Eidemiller settled his personal injury claim against tortfeasor Musick by accepting the $25,000 policy limits from Musick's insurance carrier in November 1990. He settled his personal injury claim against tortfeasor Guzan by accepting a payment of $5,500 from Guzan's insurance carrier in May 1992. Eidemiller made several claims for underinsured motorist benefits from State Farm. State Farm sent letters denying the claim dated November 6, 1990; April 3, 1992; April 15, 1993; and July 25, 1994. Therefore, as Eidemiller argues in his brief, the earliest conceivable date that the statute could begin to run is November 6, 1990, when State Farm first denied recovery of underinsured motorist benefits. We agree. Eidemiller filed this action against State Farm on August 24, 1994. Consequently, the suit was filed within the 5-year limitation period under K.S.A. 60-511(1), after State Farm had first denied coverage.

Reversed and remanded.