No. 73,861

JAMES M. EIDEMILLER, *Appellant*, v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, *Appellee*.

933 P.2d 748

Opinion filed March 7, 1997.

*David T. Greis*, of William H. Pickett, P.C., of Kansas City, Missouri, argued the cause, and *William H. Pickett, Gregory J. Abella*, and *Michael R. Taylor*, of the same firm, were with him on the briefs for appellant.

*Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Clifford T. Mueller*, of the same firm, was with him on the brief for appellee.

*Arthur S. Chalmers* and *Mary E. Giovanni*, of Kahrs, Nelson, Fanning, Hite & Kellogg, L.L.P., of Wichita, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This litigation involves a claim for underinsured motorist coverage by the insured, James Eidemiller, under three separate policies with State Farm Mutual Automobile Insurance Company (State Farm). The district court entered summary judgment for State Farm on the ground that K.S.A. 40-284(d) prohibits stacking insurance policies. The Court of Appeals reversed on the ground that the statute prohibits stacking only if the insurance agreement contains an express anti-stacking provision. *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 22 Kan. App. 2d 278, 915 P.2d 161 (1996). This court granted State Farm's petition for review on the stacking question.

The sole issue in this appeal is whether K.S.A. 40-284(d) prohibits stacking underinsured motorist coverage from separate ve-

hicle liability insurance policies or gives insurance companies the right to eliminate stacking by including express anti-stacking provisions in their policies. The facts are not in dispute. Eidemiller was injured in an automobile accident. He was a passenger in a car driven by Edward Musick that struck a car driven by John Guzan II. Eidemiller settled his liability claim against Musick for Musick's policy limits of $25,000. He settled his liability claim against Guzan for $5,500. The liability limit of Guzan's policy was $25,000.

State Farm insured Eidemiller under three separate automobile insurance policies. The underinsured motorist limit of each policy was $25,000. State Farm did not include an anti-stacking provision in any of the three policies.

Claiming that the liability settlements did not adequately compensate him for his injuries, Eidemiller notified State Farm that he was making an underinsured motorist claim based on the three combined State Farm policies. State Farm denied the claim, and Eidemiller sued for breach of contract.

K.S.A. 40-284(d) is known as the anti-stacking provision of the uninsured and underinsured motorist coverage statute, K.S.A. 40-284. This court has defined "stacking" as "the right to recover on two or more policies in an amount not to exceed the total of the limits of liability of all policies up to the full amount of the damages sustained." *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 608, 549 P.2d 1354 (1976).

Before the anti-stacking provision was added to K.S.A. 40-284 in 1981, L. 1981, ch. 191, § 1(d), it was presumed in Kansas case law that underinsured motorist coverage would be stacked. See, *e.g., Welch v. Hartford Casualty Ins. Co.*, 221 Kan. 344, 349, 559 P.2d 362 (1977). The question in this case is whether the legislature intended the addition of subsection (d) in 1981 to eliminate policy stacking or to give insurance companies the right to eliminate stacking by including anti-stacking provisions for the uninsured/underinsured motorist coverage in their policies.

The Court of Appeals concluded that the statute gives insurance companies the right to eliminate stacking by including anti-stacking provisions in their policies. Because State Farm had not included anti-stacking provisions in any of the applicable policies, the Court

of Appeals reversed the trial court's entry of summary judgment in favor of the insurer.

The Court of Appeals supported its conclusion with a rule of construction and citation to *Howard v. Farmers Ins. Co.*, 5 Kan. App. 2d 499, 619 P.2d 160 (1980), *rev. denied* 229 Kan. 670 (1981). The applicable rule of construction, as stated by the Court of Appeals, is that Kansas "precedent requires that insurance contracts be strictly construed against insurance companies which prepare insurance contracts and in favor of the insured. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 232, 597 P.2d 1080 (1979)." 22 Kan. App. 2d at 281. This principle also has been stated as follows: "Coverage clauses of automobile liability policies are to be broadly interpreted to afford the greatest possible protection to the insured, while exclusionary clauses are interpreted narrowly." *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, Syl. ¶ 3, 681 P.2d 15 (1984). The Court of Appeals concluded "that because State Farm declined to incorporate the anti-stacking language of 40-284(d) into its policies, State Farm is equitably estopped from using that statute to bar Eidemiller from stacking the three State Farm insurance policies." 22 Kan. App. 2d at 285.

The Court of Appeals also considered and rejected the argument that policy provisions other than express anti-stacking clauses effectively preclude stacking. First, it considered that the State Farm policies defined an underinsured motorist in language identical to the statutory definition, K.S.A. 40-284(b). Second, it considered offset provisions. The Court of Appeals concluded that the offset provisions only prohibited stacking the tortfeasor's liability coverage onto the victim's underinsured coverage. 22 Kan. App. 2d at 285-86.

State Farm's argument in this court focuses primarily on the language of K.S.A. 40-284(d) and the legislative intent. The insurer also argues that neither the reasonable expectations doctrine nor the principle of equitable estoppel supports the Court of Appeals' decision.

Established principles of statutory construction include the following:

"Interpretation of a statute is a question of law, and it· is the function of the court to interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained."

"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶¶ 1, 2, 829 P.2d 561 (1992).

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

## K.S.A. 40-284(d), which governs this case, provides:

"Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident."

The current subsection (d) was among amendments made to the uninsured/underinsured motorist insurance coverage statute in 1981. L. 1981, ch. 191, § 1. Uninsured motorist coverage was elective in Kansas until 1968. L. 1968, ch. 273. From 1968 until 1981, it was required unless waived in writing. L. 1981, ch. 191, § 1(a). In 1981, minimum dollar requirements were set for uninsured motorist coverage. L. 1981, ch. 191, § 1(c). The legislature made other substantive changes to the statute in 1981, including the addition of a requirement for underinsured motorist coverage, L. 1981, ch. 191, § 1(b), and the addition of subsections (d) and (e), which were concerned respectively with stacking policies and exclusions of coverage. Subsection (d) has not changed since it was introduced in 1981. The current subsection (e) is the same as the provision introduced in 1981 in all respects germane to this discussion. Subsection (d) is quoted in the preceding paragraph. The rest of 40-284 provides in pertinent part as follows:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued

for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. . . .

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

"(c) The insured named in the policy shall have the right to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107 and amendments thereto. . . .

. . . .

"(e) Any insurer may provide for the exclusion or limitation of coverage:

(1) When the insured is occupying or struck by an uninsured automobile or trailer owned or provided for the insured's regular use;

(2) when the uninsured automobile is owned by a self-insurer or any governmental entity;

(3) when there is no evidence of physical contact with the uninsured motor vehicle and when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making claim under the policy;

(4) to the extent that workers' compensation benefits apply;

(5) when suit is filed against the uninsured motorist without notice to the insurance carrier; and

(6) to the extent that personal injury protection benefits apply.

"(f) An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. Such written notice shall include written documentation of pecuniary losses incurred, including copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers. Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured

for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage."

State Farm would have the court contrast the mandatory and the permissive language of subsections (d) and (e) of 40-284. In State Farm's view, subsection (d) creates an absolute prohibition on stacking coverages and subsection (e) permits certain identified exclusions and limitations of coverage. The insurer relies on a federal court's statement that "the Kansas legislature clearly intended § 40-284(d) to be mandatory or the legislature would have used the optional language used in § 40-284(e)." *Walker v. State Farm Mut. Auto. Ins. Co.*, 973 F.2d 634, 638 (8th Cir. 1992).

In *Walker*, the accident occurred in Iowa and suit was filed there, the Walkers were residents of Kansas, and the other driver was from Nebraska. The law of Kansas was applied under the choice-of-law provision of the forum, Iowa, because Kansas was determined to have the most significant interest in the litigation. 973 F.2d at 636-37.

The Walkers had six vehicles insured with State Farm. They argued that under K.S.A. 40-284(d), their underinsured motorist coverage should equal the total amount of the underinsured motorist coverage in the six insurance policies. Their theory was described by the federal court as follows:

"The Walkers admit that the 1981 amendment eliminated automatic stacking in Kansas, but claim that the amendment only gave insurance companies the right to eliminate stacking. Because nothing in their insurance policies specifically eliminates stacking, the Walkers argue that § 40-284(d) should not automatically be read into their insurance contracts. The Walkers argue that because this new provision is for the benefit of insurance companies, State Farm must explicitly add anti-stacking language to their policies for § 40-284(d) to have effect. The Walkers claim that their interpretation prevents insurance companies from 'sandbagging' their customers by not adding the anti-stacking language to the policies, but then forbidding stacking." 973 F.2d at 637.

The Eighth Circuit Court of Appeals rejected the Walkers' argument in favor of State Farm's straightforward contention that the

statutory language "shall be limited" made it a mandatory rather than an optional provision. The court stated its reasoning:

"Section 40-284(d) clearly states that underinsured motorist coverage 'shall be limited' to the maximum of one policy. This mandatory language contrasts with Kan. Stat. Ann. § 40-284(e) (emphasis added) which states that '[a]ny insurer *may provide* for the exclusion or limitation of coverage' and then provides a list of terms. Section 40-284(e) is clearly optional and for the exclusions to apply, the exclusion must be written into the insurance policy. Therefore, the Kansas legislature clearly intended § 40-284(d) to be mandatory or the legislature would have used the optional language used in § 40-284(e). [Citation to another federal case omitted.] *Farmers Ins. Co. v. Gilbert*, 14 Kan. App. 2d 395, 791 P.2d 742, 747, *aff'd & modified on other grounds*, 247 Kan. 589, 802 P.2d 556 (1990)." 973 F.2d at 637-38.

Eidemiller refers to *Walker* as "the only case which has ever directly addressed the issue raised by this litigation." Eidemiller does not take issue with the conclusion that the language of subsection (d) is mandatory, but he differs with the federal court's conclusion about what it mandates. He contends that the statute requires insurers to include in each automobile liability policy "specific language informing the insured of the ban on stacking under subsection (d)." His contention raises the obvious question why the legislature did not simply say that the insurer must expressly provide for it in the policy rather than stating in the statute that coverage is limited to the highest limits of any single applicable policy.

Eidemiller suggests that the organization of the statute conveys the meaning. He offers a partial overview of the mandatory and permissive verbs in the various subsections of 40-284:

" 'Shall' in K.S.A. 40-284(a) mandates the inclusion of specific language in the contract about uninsured motorist benefits. 'Shall' in K.S.A. 40-284(b) mandates the inclusion of specific language in the contract about underinsured motorist benefits. 'Shall' in K.S.A. 40-284(c) mandates specific language in the contract or inferentially by other written materials, informing the insured of his or her right to reject limits for uninsured motorist coverage which are higher than the statutory minimum, even though his liability coverage may be substantially higher than that minimum. 'May' in K.S.A. 40-284(e) mandates the inclusion of specific language in the contract in order for the insurance carrier to take advantage of one or more of the permitted exclusions or limitations.

"It is only the 'shall' in K.S.A. 40-284(d) which somehow does not mandate specific language in the contract informing the insured about the exclusion of stacking—at least according to the Eighth Circuit and the District Court. It is only the 'shall' in the anti-stacking statute which somehow eliminates the need to *completely* inform the insured of what he does and does not have a right to receive from his insurance carrier as a result of payment of the premiums, if there is a loss.

"This interpretation—that what the Legislature has actually done is to mandate *notice* to the insured of what coverage they actually have and do not have—is the most logical interpretation of K.S.A. 40-284."

Eidemiller left subsection (f) out of his analysis. The portion of the statute he considered might be described in terms of three checklists. The first is contained in subsections (a) and (b). It is for uninsured/underinsured motorist coverage provisions that must be included in writing in an automobile liability policy in order for it to be valid. The second is contained in subsections (c) and (d). It is for rights and limitations the insured must be given written notice of. The third is contained in subsection (e). It is for provisions that must be included in writing in such a policy in order for the provisions to be valid and enforceable.

Although subsections (a) and (b) may be read as Eidemiller suggests, the effort to match his theory with the statute fails on subsections (c) and (d). Subsection (c) expressly provides to the insured the right to reject uninsured motorist coverage in excess of minimum amounts set by K.S.A. 40-3107. It does not expressly require notice of that right to be included in the policy. Eidemiller hedged his theory by inserting the alternative "or inferentially by other written materials" after his assertion that subsection (c) requires specific language in the contract. Trying to save the accuracy of his assertion by interjecting the alternative, Eidemiller crippled his thesis. Subsections (c) and (d) are alike in that neither expressly requires specific language in the insurance contract. If subsection (c) cannot accurately be paraphrased without conceding that it does not require a policy provision, the contention that subsection (d) requires a policy provision is seriously flawed.

*Amicus curiae*, Kansas Association of Defense Counsel, argues that the language of K.S.A. 40-284(d) plainly and unambiguously prohibits stacking uninsured/underinsured motorist coverages.

*Amicus curiae* also argues that *Howard* is inapplicable, addresses the question of equitable estoppel, and brings to the court's attention decisions from other states.

The Court of Appeals' decision in *Eidemiller,* 22 Kan. App. 2d at 281-83, depends heavily on its reading of *Howard,* which denied indemnity rights to a PIP insurer that claimed the rights under a statute that permitted subrogation to the insurance company. The statute was not incorporated into the policy. The policy provided that there was no reimbursement right for the PIP benefits, but the insurer argued that statutes should be read into the policy. The reason emphasized by the Court of Appeals in the present case for the subrogation statute not being read into the policy was the insurer's obligation "to comply with the interpretation of the policy most favorable to its insured." *Howard,* 5 Kan. App. 2d at 506. The Court of Appeals quoted the following statements and quoted from *Howard*:

" 'This line of cases is an example of a statute not being read into a policy because the statute conferred a benefit on the insurance company, rather than the insured.

'As was stated in 44 C.J.S., Insurance § 302, pp. 1219-20:

' "The parties to the insurance contract cannot waive an applicable statutory provision, that is, a statutory provision for the benefit of insured cannot be contracted away, but it is held that a provision for the benefit of the company may be insisted on or waived by it as it chooses." ' 5 Kan. App. 2d at 505." 22 Kan. App. 2d at 282-83.

We question the Court of Appeals' reliance on *Howard v. Farmers Ins. Co.,* 5 Kan. App. 2d 499, 619 P.2d 160 (1980), *rev. denied* 229 Kan. 670 (1981). *Howard* is distinguishable from the instant case in that there was an express policy provision that was at odds with the statute in that case. The insurance policy provided that there were no reimbursement rights for the PIP benefits at issue, but the statute provided that there were: "K.S.A. 40-3113 was amended in 1977 to provide the PIP insurer with subrogation rights to recoveries from third-party tortfeasors for survivor or funeral benefits paid, said amendments to be effective July 1, 1977." 5 Kan. App. 2d at 500. The court concluded that the inconsistency between the contract of insurance and the statute was an ambiguity

in the policy and resolved it in favor of the insured. "Because the insurer was the preparer of the policy, any ambiguity should be resolved in favor of the insured." 5 Kan. App. 2d at 506. Here, there is no conflict between an express policy provision and the statute. Thus, there is no ambiguity, which was the linchpin for the holding in *Howard*.

*Amicus curiae* points out that the statute at issue in *Howard* granted a right, in contrast with 40-284(d), which "is a statement of prohibition." *Amicus curiae* argues that the insurer in *Howard* effectively waived its statutory right by including the inconsistent provision in the policy and that allowing the insurer to waive its right did not foil the legislature's intent. In contrast, the argument continues, State Farm did not include a provision contrary to the statute in its policy and it cannot be said to have waived the prohibition on stacking by its silence. We agree.

The Court of Appeals also looked to the cases cited in *Howard*: *Chandler v. Insurance Co.*, 180 Mo. App. 394, 398-99, 167 S.W. 1162 (1914), and *Conte v. Yorkshire Ins. Co.*, 5 Misc. 2d 670, 163 N.Y.S.2d 28 (1957). The Court of Appeals stated: "Both *Chandler* and *Conte* involve statutory benefits created for the insurer which were *absent* from the contract. The *Chandler* and *Conte* courts held that an insurer by its actions could either waive or be estopped from claiming those statutory benefits." 22 Kan. App. 2d at 283. For what it is worth, both cases are factually distinguishable from the present case.

In *Chandler*, the plaintiffs failed to give the insurer proof of the insured's death within 90 days as required by statute. As to the waiver of notice, the court said:

"[T]he proviso in question was enacted for the benefit of the company which it can insist upon or waive as it chooses. No law or rule of public policy is violated by permitting the beneficiaries of an insured to collect and receive the insurance called for by the policy without furnishing proofs in a fixed and specified time. The statute was not passed to create a cause of action and does not of itself do so. It was passed for the purpose of writing into insurance contracts a provision for extended insurance for the benefit of the insured, and contains the proviso for the benefit of the insurer. The contracting parties are not on an equal footing. The legislature can provide what sort of contracts insurance companies may make with the people of the State. [Citations omitted.] Especially is this true of foreign

insurance companies. [Citation omitted.] When, therefore, the insured and defendant entered into this contract, the statute wrote itself into and formed a part of the contract, and the cause of action is not strictly created by the statute, but by the contract containing the statute as one of its provisions. No law or rule of public policy requires the company to be protected to the extent that it cannot waive a requirement imposed on the insured as to the time in which notice is to be given. A statutory right or benefit given for its protection can be waived the same as any other right." 180 Mo. App. at 399.

The court proceeded to find that the insurer did not waive the statutory provision for notice:

"The acts relied upon as constituting waiver occurred after the ninety days had elapsed. Nothing was done by the insurer, during the time in which notice should have been given, which in any way influenced or induced the failure to give notice or furnish proofs. Where the act relied upon to constitute waiver occurs after the time for furnishing proof of death has expired, such act must be in the nature of, or possess some elements of, estoppel, that is, must be such as induced insured's beneficiaries to change their position, for example, go to some additional expense. [Citations omitted.] Unless, therefore, the plaintiffs were misled by the acts relied upon as waiver and were thereby induced to change their position, no waiver exists." 180 Mo. App. at 399-400.

Neither *Howard* nor *Chandler* supports the basic determination by the Court of Appeals that because 40-284(d) benefits the insurer it must be expressly included in the policy to be effective. To the contrary, applying the above rationale to the present case, 40-284(d) would become a part of the insurance contract and, thus, State Farm would not waive or be estopped from claiming the benefit of the statute.

Based almost entirely on *West American Ins. Co. v. Park*, 933 F.2d 1236 (3d Cir. 1991), the Court of Appeals concluded "that because State Farm declined to incorporate the anti-stacking language of 40-284(d) into its policies, State Farm is equitably estopped from using that statute to bar Eidemiller from stacking the three State Farm insurance policies." 22 Kan. App. 2d at 285. The Court of Appeals acknowledged at the outset that *West American* was distinguishable from the present case. Regardless, the Court of Appeals found the case "helpful." 22 Kan. App. 2d at 284. We do not.

One of the factors on which the Court of Appeals based its conclusion that State Farm's position was comparable to that of *West American* was that State Farm received premiums for all three policies under which Eidemiller was insured. The Court of Appeals disapproved of State Farm's trying to avoid coverage it had accepted payment for. 22 Kan. App. 2d at 283.

*Amicus curiae* responds that the premise that State Farm received premiums for the coverage it is attempting to bar "is factually wrong." It reasons: "Current [underinsured motorist] premium rates presume the coverage does not stack. If the statutory authorized definition of [underinsured motorist] coverage is employed, there should never be a[n underinsured motorist] claim, in contrast to a[n uninsured motorist] claim, on a minimums limit policy (25/50)." It would appear to be true that, without stacking, a Kansas policyholder who had purchased minimum coverage would never have coverage which exceeded another Kansan's coverage, and, hence, he or she would not be making a claim for underinsured motorist coverage. If other states set lower minimums for motor vehicle liability coverage, however, a policyholder from another state conceivably could trigger Kansas' underinsured motorist coverage. Thus, an insurer could compute a price for the minimum coverage policy without charging for underinsured motorist coverage, but might also have reason to include a charge for the coverage in the premium. The record is silent on this point as well as the basis, if any, for computing the cost for underinsured coverage. Whether State Farm specifically included or excluded charges for underinsured motorist coverage in the premiums for the policies under which Eidemiller made his claim is a factual determination which cannot be made here. Premiums were paid for each of the three policies under which Eidemiller sought payment and each purported to provide underinsured motorist coverage. Beyond that, the record is silent.

With regard to the fact that distinguishes State Farm's position from that of *West American*, the Court of Appeals stated: "Notably, West American's policy was more egregious than in the present case, as it not only failed to refer to the statutory prohibition on stacking but expressly provided for the prohibited coverage." 22

Kan. App. 2d at 284. In the view of the Court of Appeals, however, both insurance companies induced their policyholders to expect the coverage under separate policies to be combined. The Court of Appeals noted that the federal court found it was not so much the express policy provision as West American's "collecting premiums for underinsured motorist coverage under both policies" that induced the consumer to believe she could recover under both policies. 22 Kan. App. 2d at 284. We find no inducement by State Farm in the present case. In *West American*, the insurance company affirmatively misrepresented the law.

It appears that in *Walker*, plaintiff's attorney also raised estoppel and reasonable expectations as reasons why stacking should be allowed. In that case the federal court dismissed these equitable considerations in a footnote: "These arguments are simply a repetition of [the Walkers'] statutory interpretation argument and fail for the same reasons." 973 F.2d at 638 n.5.

K.S.A. 40-284(d) limits underinsured motorist coverage to the policy with the highest limits. It clearly expresses the legislature's intent to prohibit stacking underinsured motorist coverage from separate policies. Eidemiller concedes as much, and the Court of Appeals concurs that such an interpretation is consistent with "Kansas rules of statutory construction." 22 Kan. App. 2d at 281. It benefits the insurer, but it is not an optional benefit or right that must be specifically included in the policy to be effective. It is a legislative mandate prohibiting the stacking of underinsured coverage and, as such, it becomes part of the vehicle liability insurance policy.

If the legislature intended to give insurers the right to eliminate stacking of underinsured motorist coverage, it would have been included in 40-284(e). K.S.A. 40-284(e) provides a list of exclusions and limitations the insurer "may provide for" in the policy. That is exactly what the legislature did with respect to liability coverage in K.S.A. 40-3107(i)(5), which provides:

"(i) [I]n addition to the provisions of subsection (h) and notwithstanding any other provision contained in subsections (a), (b), (c) and (d) of this section, any insurer *may exclude coverage*:

. . . .

(5) if two or more vehicle liability policies apply to the same accident, the total limits of the liability under all such policies shall not exceed that of the policy with the highest limit of liability." (Emphasis added.)

We conclude that the purpose of K.S.A. 40-284(d) is to prohibit stacking uninsured motorist coverage on vehicle liability policies. As such, it becomes a part of each of the State Farm policies, and we construe the underinsured motorist coverage as if the parties had written 40-284(d) into the policies. State Farm did nothing to waive or to be estopped from claiming the benefit of 40-284(d). Thus, Eidemiller is not permitted to stack the underinsured coverage of the three State Farm insurance policies.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.