Beth WILLIAMS, Plaintiff,

Rebecca Jaynes, Respondent,

v.

Thomas SILVOLA Jr.,
et al., Defendants,

Farmers Insurance Company, Inc.,
and Mid–Century Insurance
Company, Appellants.

No. WD 66055.

Missouri Court of Appeals,
Western District.

April 10, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 2007.

Application for Transfer Denied
Oct. 30, 2007.

Randolph G. Willis, Kansas City, MO, for appellants.

Paul L. Redfearn, III, Kansas City, MO, Michael D. Holzknecht, Co–Counsel, Stockton, MO, for respondent.

Before NEWTON, P.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Farmers Insurance Company and Mid–Century Insurance Company (collectively referred to as "Farmers") appeal the trial court's judgment granting summary judgment in favor of Rebecca Jaynes finding that Ms. Jaynes was entitled to stack coverage under seven different uninsured motorist policies issued by Farmers. In particular, the trial court found that the Limits of Liability section of the uninsured motorist portion of each policy was ambiguous and, therefore, construed the policy against Farmers and in favor of Ms. Jaynes. Farmers raises three points on appeal.

In its first point, Farmers asserts that the trial court erred in denying its motion for summary judgment because choice of law principles dictate that Kansas law governs and, under Kansas law, stacking of insurance polices is prohibited. In its second point, Farmers contends that the trial court erred in finding that the policy language, "[s]ubject to the state of the occurrence," in the Limits of Liability section was ambiguous because such language, when read in the context of that section, applies only to the per person and per occurrence policy limits and cannot be construed as a choice of law provision. Finally, in its third point, Farmers claims that the trial court erred in granting Ms. Jaynes' motion for summary judgment because, even if the phrase "[s]ubject to the state of the occurrence" in the Limits of Liability section is ambiguous, the court should not have interpreted the phrase as argued by Ms. Jaynes because her interpretation did not account for the intentions of the parties and failed to apply the reasonable expectations of Ms. Jaynes.

The trial court did not err in finding that the policy language, "[s]ubject to the law of the state of the occurrence," found in the Limits of Liability section of each of the policies, was ambiguous and, therefore, in construing the policy language in favor of the insured, Ms. Jaynes. Accordingly,

the trial court's judgment granting summary judgment in favor of Ms. Jaynes is affirmed.

## Factual and Procedural Background

On February 26, 1998, Ms. Jaynes was driving her sister's car, which is licensed and registered in Missouri, on Highway 71 in Barton County, Missouri, when she was rear-ended by Thomas Silvola.[1] As a result of the accident, Ms. Jaynes suffered injuries requiring medical care in excess of $350,000. Mr. Silvola was uninsured at the time of the accident. Ms. Jaynes made a claim for uninsured motorist (UM) benefits against Farmers, the insurers of seven vehicles owned by Ms. Jaynes and her husband, under seven separate automobile policies.[2]

Ms. Jaynes and her husband reside in Kansas, where each of the seven vehicles insured by Farmers are garaged. In addition, the Jayneses purchased each of the seven insurance policies in Kansas. All seven policies were in effect on the date of the accident and provide UM coverage limits of $50,000 per person and $100,000 per occurrence. Each policy contains identical coverage forms and endorsements. In May 2002, Farmers paid Ms. Jaynes $50,000 for the injuries she sustained in the accident under one of the seven policies.

▮ On October 8, 2002, Ms. Jaynes filed suit against Farmers for breach of the insurance policies and vexatious refusal to pay.[3] Ms. Jaynes alleged that under the clear language of each of the insurance policies, Missouri law, the state where the accident occurred, governs the issue of whether the policies may be "stacked."[4] Because Missouri law requires that multiple UM coverages must be allowed to be stacked, Ms. Jaynes alleged that she was entitled to an additional aggregate UM payment from Farmers in the amount of $300,000 on the remaining six policies.

On February 24, 2003, Ms. Jaynes filed a motion for partial summary judgment alleging that, because Missouri law allows stacking of uninsured motorist coverage, she was entitled to stack UM benefits under the seven insurance policies. On August 21, 2003, the trial court denied Ms. Jaynes' motion. Thereafter, Ms. Jaynes filed a motion to reconsider and Farmers filed a cross-motion for summary judgment. On August 30, 2005, the trial court granted Ms. Jaynes' motion to reconsider, granted Ms. Jaynes' motion for summary judgment, and denied Farmers' cross-motion for summary judgment. In particular, the trial court found that the policy language, "[s]ubject to the law of the state of the occurrence," found in the Limits of Liability section of each of the policies was ambiguous and, therefore, should be construed in favor of the insured, Ms. Jaynes. On September 14, 2005, the trial court entered a judgment, denominated final for

1. Mr. Silvola was a defendant in the underlying action. He is not a party to this appeal, however.

2. Farmers Insurance Company insured six of the Jayneses' vehicles and Mid–Century Insurance Company insured one of the Jayneses' vehicles.

3. Ms. Jaynes' petition included a number of additional defendants, who are not involved in this appeal.

4. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. App. E.D.1999).

purposes of appeal under Rule 74.01(b), granting final judgment on Ms. Jaynes' breach of contract claim for UM coverage against Farmers Insurance Company in the amount of $250,000 and against Mid–Century Insurance Company in the amount of $50,000. Farmers filed this appeal.

## Standard of Review

 In Farmers' first point on appeal, it claims that choice of law principles dictate that Kansas law governs. Regardless of which state's law governs the substantive issues involved in this case, however, " '[p]rocedural questions are determined by the state law where the action is brought.' " *Peoples Bank v. Carter,* 132 S.W.3d 302, 305 (Mo.App. W.D.2004) (citation omitted). The standard of review is a procedural matter for which this court will apply Missouri law. *Moore ex rel. Moore v. Bi–State Dev. Agency,* 87 S.W.3d 279, 285 (Mo.App. E.D.2002).

Under Missouri law, appellate review of a summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378. Moreover, "the interpretation of an insurance policy is a question of law." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 312 (Mo.App. E.D.1999).

## No Error In Finding Policy Ambiguous

In its first point on appeal, Farmers asserts that the trial court erred in denying its motion for summary judgment because choice of law principles dictate that Kansas law governs and, under Kansas law, stacking of insurance polices is prohibited. Specifically, Farmers argues that a conflict of law question arises in this case because Kansas law prohibits stacking of policies for uninsured motorist coverage and Missouri law allows stacking of such policies. Farmers argues that under the "most significant relationship test," Kansas law must be applied to interpret the insurance policies.

There is no dispute that under Missouri law "multiple uninsured motorist coverages *must* be allowed to be stacked" and that insurers are prevented "from including policy language denying … stacking." *Niswonger,* 992 S.W.2d at 313. Likewise, there is no dispute that Kansas law prohibits stacking of uninsured motorist insurance coverages. *See Eidemiller v. State Farm Mut. Auto. Ins. Co.,* 261 Kan. 711, 933 P.2d 748, 756 (1997); K.S.A. 40–284(d). Nevertheless, while Kansas prohibits stacking of uninsured motorist coverage on vehicle liability policies, in *Eidemiller,* the Kansas Supreme Court undertook an analysis to determine whether State Farm waived or should be estopped from claiming the benefit of Kansas's anti-stacking statute. 933 P.2d at 756. In concluding, "State Farm did nothing to waive or to be estopped from claiming the benefit of 40–284(d)," the court ultimately held that the insured was not permitted to stack coverage under three insurance policies at issue in that case. *Id.* Had the Court determined that the statute precluded a Kansas insurance company from waiving the benefit of Kansas's anti-stacking statute, the

Court would not have undertaken such an analysis.

Each of the policies at issue in this case contain provisions expressly prohibiting stacking of UM coverage. Ms. Jaynes, however, argued that the "[s]ubject to the state of the occurrence" clause in the Limits of Liability section of the policies could reasonably be construed as a choice of law provision providing that the question regarding stacking of coverage should be governed by the law of the state of the occurrence, when that state permitted stacking. The trial court accepted Ms. Jaynes' claim and specifically found that "uncertainty exists as to the meaning of the policy language 'subject to the law of the state of the occurrence' found in the 'Limits of Liability' section of Part II of the policies in question." In addition, the trial court found that "all parties have plausible arguments as to whether Missouri law regarding 'stacking' is prohibited by each policy" and "the ambiguity created by the uncertainty cannot be 'harmonized away' by reading the policy as a whole." Thus, in granting summary judgment in favor of Ms. Jaynes, the trial court held that " '[w]hen policy language is ambiguous, it must be construed against the insurer ... [and] in favor of the insured.' "

■ While Farmers argues that the first question that must be answered in this case is which state's law governs, which would require a conflict of law analysis, if this court agrees with the trial court that the policy language is ambiguous, a conflict of law analysis need not be undertaken. This is so because on the substantive issue of determining whether an insurance policy is ambiguous, Missouri and Kansas law are virtually identical.[5] In addition, under both Missouri and Kansas law, when an insurance policy is found to be ambiguous, the ambiguity must be construed against the insurer and in favor of the insured.[6] And, finally, as set forth above, even though Kansas law prohibits stacking of uninsured motorist coverage, because an insurer may be estopped from claiming the benefit of Kansas's anti-stacking policy, if the insurance policy is ambiguous, under the law of either Missouri or Kansas, the policy must be construed in favor of the insured. Therefore, the first question that must be answered is whether the trial court erred in finding the policy ambiguous, the issue raised in Farmers' second point on appeal.

"Whether an insurance policy is ambiguous is a question of law."[7] *Niswonger*, 992 S.W.2d at 316. "An ambiguity arises when there is duplicity, indistinctness or uncertainty in the meaning of the words used in the policy." *Id.* "Language is

---

**5.** *See, e.g., Loucks v. Farm Bureau Mut. Ins. Co.*, 33 Kan.App.2d 288, 101 P.3d 1271, 1281 (2004) (" 'test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean' " (citation omitted)); *Niswonger*, 992 S.W.2d at 316 (in determining whether policy is ambiguous, " 'the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy' " (citation omitted)).

**6.** *See, e.g., Loucks*, 101 P.3d at 1281 (if policy is ambiguous, "it is given the construction

most favorable to the insured"); *Niswonger*, 992 S.W.2d at 316 ("when provisions of an insurance policy are ambiguous, they are construed against the insurer").

**7.** While Farmers argues that under a choice of law analysis, Kansas law governs this dispute, it nevertheless cites Missouri case law on the substantive question of whether an insurance policy is ambiguous. Because Missouri law and Kansas law are virtually identical on the issue, however, this court will address the issue in terms of Missouri law. See footnote 5, *supra*.

ambiguous if 'it is reasonably open to different constructions,' and, in determining whether that is the case, 'the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy.' " *Id.* (citation omitted). When ambiguity exists, "insureds are entitled to a resolution of that ambiguity consistent with their objective and reasonable expectations as to what coverage would be provided." *Id.*

 In its second point on appeal, Farmers claims that the trial court erred in finding that the policy language "[s]ubject to the law of the state of the occurrence" in the Limits of Liability section was ambiguous because when the language is read in the context of that particular section, the phrase applies only to the per person and per occurrence policy limits.[8]

The specific provision at issue in this case is found in Part II—Uninsured Motorist, Limits of Liability section of each of the seven policies. That section provides:

> The limits of liability shown in the Declarations apply subject to the following:
> 1. The limit for "each person" is the maximum for bodily injury sustained by any person in any one occurrence.
> 2. Subject to the limit for "each person," the limit for "each occurrence" is the maximum combined amount for bodily injury sustained by two or more persons in any one occurrence.
> 3. *Subject to the law of the state of the occurrence,* we will pay no more than these maximums regardless of the number or vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence.

> 4. The limits of liability for this coverage will be applied separately to injuries caused by an uninsured motor vehicle and injuries caused by an underinsured motor vehicle.
> 5. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid for the same damages because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.

(Emphasis added.)

Farmers argues that the "[s]ubject to" language of paragraph 3 must be read in context of the phrases "each person" and "each occurrence" found in paragraphs 1 and 2. Farmers claims that based on the "these maximums" language in paragraph 3, the "[s]ubject to" language, also in paragraph 3, is merely a reference to the "each person" and "each occurrence" limits found in paragraphs 1 and 2. In other words, Farmers argues that the "[s]ubject to" language is not a choice of law provision concerning the issue of stacking, but rather is merely a per occurrence liability limit.

Farmers also claims that the "[s]ubject to" language "does not purport to dictate that the entire policy be subject to the law of the state of the occurrence." Rather, Farmers argues that the "[s]ubject to" language is necessary because different states enforce varying amounts of statutorily required minimum automobile coverage and that the clause is "merely an attempt to conform the subject policy's per occurrence limit of liability of that of any foreign state outside of Kansas should the

---

8. In its second point on appeal, Farmers also argues that the "[s]ubject to the law of the state of the occurrence" language cannot be interpreted as a choice of law provision because the provision is not enforceable under a choice of law analysis. Farmers, however, fails to raise this claim of error in its point relied on and, therefore, this issue is "not presented for review" and will not be considered. *Lusher v. Gerald Harris Constr., Inc.,* 993 S.W.2d 537, 544 (Mo.App. W.D.1999).

'occurrence' happen there." In other words, Farmers claims that "paragraph 3 unambiguously states that regardless of the number of vehicles insured or involved in the accident and regardless of the number of persons, claims, or policies involved in the accident, the maximum limit of liability will be stated in the declarations and paragraphs 1 and 2 under 'Limits of Liability,' *unless* the financial responsibility law of the state of the occurrence requires a higher per person or per occurrence minimum than the limits stated on the declarations." To interpret the provision in the manner Farmers suggests, however, would require one to read into the provision the additional language "regarding the statutorily required minimum automobile coverage." It would not be part of the common knowledge of a person of ordinary understanding and intelligence to know that they had to read this language into the provision when interpreting their insurance policy.

Even if this court agrees with Farmers that its interpretation of paragraph 3 is plausible, Ms. Jaynes' interpretation is similarly plausible. Contrary to Farmers' argument, this court finds that paragraph 3 does appear to relate to "stacking" of coverage under multiple policies. Paragraph 3 expressly states that Farmers "will pay no more than these maximums *regardless of the number or vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence.*" (Emphasis added.) Section 40–284(d) of the Kansas statutes, which prohibits stacking, provides:

Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, *regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the poli-*

*cy or premiums paid or vehicles involved in an accident.*

(Emphasis added.) The language in paragraph 3 tracks the language used in section 40–284(d) to an extent that paragraph 3 can reasonably be interpreted to concern the same subject matter, i.e., stacking of coverages.

Nevertheless, in its second point on appeal, Farmers further argues that when the "[s]ubject to" language of paragraph 3 is read in the context of the entire insurance policy, an interpretation that Missouri law governs on the issue of stacking, conflicts with other terms in the policy. In particular, Farmers points to two other provisions in each of the seven insurance policies that expressly preclude stacking. First, under Part II—Uninsured Motorist, Other Insurance, paragraph 4 states:

If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

Second, under Part V—Conditions, paragraph 6, Two or More Cars Insured, provides:

With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

These provisions, Farmers claims, "reinforce" its interpretation that the "[s]ubject to" language is "isolated and specific only with regard to the limits of liability and 'these maximums.'" Farmers contends that if, in fact, the issue of stacking were to be controlled by the state of the occur-

rence, both of these clauses would also have included "subject to" language.

Farmers further argues that interpreting the "[s]ubject to" language in paragraph 3 as a choice of law provision also conflicts with another policy provision contained in Part V—Conditions, which provides that "[p]olicy terms which conflict with laws of Kansas are hereby amended to conform to such laws." Farmers argues that because stacking is prohibited in Kansas, if the "[s]ubject to" language were read as allowing coverage to be stacked under Missouri law, a conflict with the laws of Kansas would be created in direct contradiction to the language of the policy.

■■■ This court notes that Farmers correctly assumes that in interpreting an insurance policy, specific provisions must not be read in isolation but the entire policy must be viewed as a whole. *See Tuttle v. Muenks,* 21 S.W.3d 6, 11 (Mo. App. W.D.2000) (terms of contract viewed as a whole, not in isolation). This court also agrees with Farmers' conclusion that paragraphs 4 and 6 are clearly anti-stacking clauses that prohibit a policyholder from stacking benefits under multiple policies. Similarly, because Missouri law allows stacking and Kansas law prohibits stacking, following Missouri law on the issue of stacking would directly conflict with the provision in Part V of each policy that provides that policy terms that conflict with Kansas law are amended to conform to the law of Kansas. Because these provisions conflict with Ms. Jaynes' interpretation of the "[s]ubject to" language of paragraph 3, Farmers concludes that Ms. Jaynes' interpretation must, therefore, be rejected. Contrary to Farmers' argument, however, seeming contradictions in an insurance policy must be harmonized away if reasonably possible. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396, 401 (Mo.App. W.D.1993).

In this case, the trial court found that the contradictions between the "[s]ubject to" language in paragraph 3 and these other provisions in the policy could not be harmonized. This court agrees with the trial court's conclusion. The "[s]ubject to" language of paragraph 3, as discussed above, arguably gives a policyholder the right to stack UM coverage if the state where the accident occurred permits stacking. Paragraphs 4 and 6, and the additional clause regarding conformance with Kansas law, however, specifically take a policyholder's right to stack coverage away. Thus, such clauses are irreconcilable and, therefore, impossible to harmonize. *See, e.g., Allison v. Nat'l Ins. Underwriters,* 487 S.W.2d 257, 262–63 (Mo.App. 1972) (irreconcilable conflict exists when an exclusion in insurance contract took away coverage specifically granted elsewhere in the contract).

■■■ Finding the provisions at issue irreconcilable, however, does not mean that Ms. Jaynes' interpretation should be rejected. Rather, "[i]f language which appears plain considered alone conflicts with other language in the contract, or if giving effect to it would render other parts of the contract a nullity, then [this court] will find the contract to be ambiguous." *Tuttle,* 21 S.W.3d at 9.

Moreover, even if the "[s]ubject to the law of the state of the occurrence" language of paragraph 3 might be unambiguous in other factual situations, i.e., if the accident had occurred in Kansas or another state that prohibits stacking, "that does not necessarily mean [the language is] unambiguous in the particular factual situation now before" the court. *Niswonger,* 992 S.W.2d at 315. In other words, if an accident were to occur in a state that permitted stacking, as happened in this case, the language "[s]ubject to the law of the state of the occurrence" "could easily

be interpreted by a lay person to mean, that it *prevails and takes precedence over the policy's*" other anti-stacking language. *Id.* at 316. "Thus, to the extent that the ["[s]ubject to" language] seems to conflict with the policy's [other] anti-stacking language, it not only creates an ambiguity in the policy, but a reasonable lay person might well look at it and think the way the conflict is resolved is that the sentence overrides such [other] conflicting language." *Id.* Consequently, the trial court did not err in finding that each of the seven insurance policies was ambiguous.

"[I]n the case of insurance contracts, ambiguities are resolved in favor of the insured...." *Tuttle,* 21 S.W.3d at 13. Accordingly, this court finds that the trial court did not err in finding each insurance policy ambiguous and, then, resolving the ambiguity in favor of Ms. Jaynes, the insured. Finding the policy ambiguous, and the law in both Missouri and Kansas identical regarding the consequences of an ambiguous insurance contract, i.e., that the ambiguity be resolved in favor of the insured, this court need not engage in a conflict of law analysis as urged by Farmers in its first point on appeal. Farmers' first and second points on appeal are, therefore, denied.[9]

### Trial Court Did Not Err in Applying Rule of *Contra Proferentem*

In its third point on appeal, Farmers claims that even if the trial court did not err in finding the policy language ambiguous, the trial court should not have resolved the ambiguity in favor of the insured because such an interpretation does not reflect the parties' intentions nor Ms. Jaynes' "reasonable expectations." Specifically, Farmers argues that because several provisions of each of the policies unambiguously prohibit stacking, and each policy states that any conflict with Kansas law are amended to conform to Kansas law, which prohibits stacking, there is sufficient evidence in the policies that the parties intended to prohibit the stacking of coverage. Therefore, Farmers claims that the trial court improperly applied the doctrine of *contra proferentem,* which provides that ambiguities in an insurance policy are construed in favor of the insured.

In support of its argument that the doctrine of *contra proferentem* should not be applied in this case, Farmers relies on *State Farm Mutual Automobile Insurance v. Esswein,* 43 S.W.3d 833 (Mo.App. E.D. 2000). Under the facts of *Esswein,* Glennetta Esswein rented a vehicle from King Auto Leasing. *Id.* at 835. In renting the vehicle, Ms. Esswein signed a standard form rental agreement that contained a provision for third party liability insurance and provided coverage for all sums an insured must pay as damages because of bodily injury or property damage. *Id.* The rental agreement provided that the limits of liability were the minimum required by the state where the vehicle was rented and, in the event that coverage was imposed for the benefit of someone other than the renter, the limit of coverage was that of the state where the accident occurred. *Id.* Ms. Esswein rented the vehicle in Missouri and her son was injured in an accident while riding in the vehicle in Ohio. *Id.* at 835–36. At the time of the accident, Ms. Esswein had automobile insurance coverage with State Farm Mutual Automobile Insurance Company. The King Auto Leasing policy signed by Ms.

---

9. In its first point on appeal, Farmers argues that under conflict of law analysis, Kansas law should govern. In its second point on appeal, while generally arguing that the provision at issue is not ambiguous, Farmers makes additional arguments relevant to a conflict of law analysis. Finding no conflict of law analysis required in this case, however, this court need not address Farmers' additional arguments.

Esswein was issued by Chrysler Insurance to Chrysler Credit Corporation. *Id.* at 836.

State Farm instituted a declaratory judgment action seeking a declaration of the parties' rights and liabilities under Ms. Esswein's policies. *Id.* State Farm eventually amended its petition to add Chrysler as a defendant and requested that the Chrysler policy be declared the primary coverage for the accident and that Chrysler was liable for the $25,000 per person coverage required under Missouri law. *Id.* Thereafter, Ms. Esswein's son filed a crossclaim against his mother for the personal injuries he suffered as a result of the accident. *Id.* State Farm again amended its petition seeking a declaration that Chrysler carried the primary obligation to defend Ms. Esswein and that Chrysler's policy provides for no limits of liability because Endorsement Three of the policy, which set forth the limits of liability coverage, did not apply to vehicles driven in Ohio. *Id.* at 836–37. The trial court concluded that the words "DOES NOT APPLY IN OHIO" referred to all of Endorsement Three and, therefore, voided in Ohio the language at the bottom of the endorsement setting forth the minimum statutory limits. *Id.* at 837–38. Consequently, the trial court found that the Chrysler policy contained no limits of liability for accidents in Ohio and that Chrysler was required to indemnify Ms. Esswein to the full extent of any and all amounts she owed to her son as a result of the accident. *Id.* at 838.

Nevertheless, on appeal, this court found that contrary to the trial court's finding, neither Ms. Esswein's nor Chrysler's interpretation of Endorsement Three could be "positively gleaned from the language" of the endorsement with any certainty. *Id.* at 841. Therefore, the court found the endorsement ambiguous. *Id.* The court then noted that the rule of *contra proferentem* is generally applicable

when provisions of an insurance policy are ambiguous. *Id.* at 842. The court went on to state, however, that "the rule of *contra proferentem* should not be applied where the intent of the parties can be ascertained from other sources." *Id.* In particular, the court found other provisions in the policy clearly indicated that the limits of liability provided in the policy were the minimum amount of liability insurance required to comply with each state's financial responsibility law. *Id.* at 842–43. In addition, the court looked to extrinsic evidence as proof of the parties' intent. Specifically, the court looked to the rental agreement signed by Ms. Esswein, which stated a "clear intent to provide the minimum limits of liability." *Id.* at 843. The court stated, that because the rental contract contained "extrinsic evidence which shed[ ] light on the parties' intentions and expectations in this case, we are compelled to consider it, along with the insurance policy, for any indication of the contracting parties' intent and for any evidence that would give a third-party beneficiary an expectancy of coverage in the amount that Mrs. Esswein urges." *Id.* This court found that by signing a contract that expressly provided that coverage was limited to the statutory minimum, Ms. Esswein could not have any reasonable expectation to the contrary. *Id.* at 844. Therefore, this court found that the parties intended to contract for liability insurance only in the amount of the statutory minimum in the state in which the vehicle was rented, and any liability for injuries sustained by Ms. Esswein's son was limited to the minimum amount of liability insurance in the state where the accident occurred. *Id.* at 845.

In relying on *Esswein* to support its position that the trial court should not have applied the rule of *contra proferentem* in this case, Farmers again points to the other provisions in each of the seven insurance policies as evidence of its intent

to prohibit stacking. This court finds *Esswein* distinguishable, however. First, in *Esswein*, the court found that neither Ms. Esswein's nor Chrysler's interpretation of the disputed language of Endorsement Three could be "positively gleaned from the language" of the endorsement. *Id.* at 841. Here, as discussed above, both Ms. Jaynes' and Farmers' interpretations of paragraph 3 are plausible.

More importantly, in *Esswein*, the only document viewed by Ms. Esswein was the rental agreement she signed with King Auto Leasing. *Id.* at 843. In that document, it was clear that coverage was limited to the minimum limits of liability. *Id.* Ms. Esswein never viewed, and had no knowledge of, the underlying document containing the ambiguous Endorsement Three. *Id.* Such is not the case, here. Rather, in this case, the Jaynes did not view nor sign any third party insurance agreement that clearly prohibited stacking, as had Ms. Esswein. The only policies at issue, in this case, are the actual policies purchased by the Jayneses. Moreover, as discussed above, Ms. Jaynes could have reasonably expected that the "[s]ubject to" language in paragraph 3 could be interpreted as superseding the other anti-stacking provisions in the policy if an accident occurred in a state that permitted stacking, such as happened in this case.

Finally, this court in *Esswein* expressly cautioned that its decision "does not stand for the alteration of the principles underlying the doctrine of *contra proferentem* as applied to insurance contracts." *Id.* at 844. Rather, this court stated, the "opinion is limited to the unique factual situation" of the case before it and that "the long line of cases affording the insured a favorable interpretation of ambiguous provisions when the insured's interpretation is plausible and supported by the other language in the policy or relevant extrinsic evidence" remained intact. *Id.* Here, the unique facts of *Esswein* are not presented in this case and Ms. Jaynes' interpretation of paragraph 3 is plausible. Consequently, the trial court did not err in applying the doctrine of *contra proferentem* after finding the language of each of the seven policies was ambiguous. Farmers' argument to the contrary is without merit.

Farmers also claims, in its third point on appeal, that interpreting the insurance policy in the manner suggested by Ms. Jaynes would lead to an "absurd result." In particular, Farmers claims that if all of the significant contacts had been in Missouri, but the accident had occurred in Kansas, Ms. Jaynes would undoubtedly argue the opposite position that she argues in this case. In other words, Farmers claims that, in essence, Ms. Jaynes' argument is that any interpretation of the limitation of liability provision should always categorically be read in whatever context is more favorable to her. Farmers argues that such a position is "simply untenable, contrary to Missouri rules of interpretation, and should be rejected." Farmers' argument, however, is the same argument it made above, that the rule of *contra proferentem* should not be applied in this case. Consequently, Farmers' claim is rejected. Farmers' third point is denied.

In sum, the trial court did not err in finding ambiguous the "[s]ubject to the law of the state of the occurrence" language contained in paragraph 3 in each of the seven policies. Thus, the trial court properly construed the language in favor of the insured, Ms. Jaynes. Accordingly, the trial court's judgment granting summary judgment in favor of Ms. Jaynes is affirmed.

All concur.