Robert R. BAUER, II and Lila
Bauer, Appellants,

v.

FARMERS INSURANCE COMPANY,
Respondent.

No. WD 68501.

Missouri Court of Appeals,
Western District.

Dec. 2, 2008.

Bruce C. Jackson, Jr., Kansas City, MO, for appellant.

Randolph G. Willis, Kansas City, MO, for respondent.

Before JAMES M. SMART, JR., THOMAS H. NEWTON, and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

Robert and Lila Bauer appeal the trial court's grant of summary judgment in fa-vor of Farmers Insurance Company on their breach of contract claim against Farmers. The judgment is reversed, and the case is remanded.

## Background

On March 30, 2002, Robert Bauer, a resident of Kansas, was injured in an automobile collision in Springfield, Missouri. Robert Bauer brought a claim for personal injuries against the other driver, Heidi Loeber, with Mrs. Bauer also seeking recovery for loss of consortium. Heidi Loeber was insured by GuideOne Insurance Company. Her policy provided liability insurance for this claim to the extent of $100,000. GuideOne settled in behalf of Ms. Loeber by paying to the Bauers the $100,000 limit of Loeber's liability coverage.

■ The Bauers had two Kansas automobile insurance policies with Farmers Insurance Company covering their two vehicles. Both policies provided uninsured and underinsured motor vehicle coverage with limits of $100,000 per person. Both policies contained the following limits of liability provision in the section dealing with uninsured and underinsured motorist coverage:

> The limits of liability shown in the Declarations apply subject to the following:
>
> . . . .
>
> 3. *Subject to the law of the state of the occurrence*, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence. (Emphasis added.)

The Bauers interpret this provision to mean that because the accident took place in Missouri, Missouri law governed the question of "stacking" their underinsured motor vehicle coverages.[1] Missouri law

1. " 'Stacking' refers to an insured's ability to    obtain multiple insurance coverage benefits

permits "stacking" of uninsured motorist coverage, including underinsured motorist coverages where an insurance policy treats uninsured and underinsured the same. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 212 (Mo. banc 1992). Thus, the Bauers concluded that they could "stack" the $100,000 coverage under each of the two policies for a total of $200,000 in coverage.

The Bauers' policies included the definition of "uninsured motor vehicle" as a motor vehicle which is:

> Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage *in amounts less than the limits of liability for this coverage* shown in the Declarations. (Emphasis added.)

Thus, the Bauers sought recovery from Farmers on the theory that Ms. Loeber, an underinsured motorist, was, for policy purposes, an "uninsured motorist" in that her total liability coverage was less than the limits of "uninsured" and "underinsured" liability under the Bauers' policies.

Farmers denied payment on the basis that Kansas law applied and that Kansas law expressly prohibits stacking of uninsured and underinsured motor vehicle coverage in K.S.A. 40–284(d), which states:

> Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made,

vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident.

On June 7, 2005, the Bauers filed a breach of contract action against Farmers in Jackson County, Missouri. Because there were no disputed material facts, both the Bauers and Farmers filed motions for summary judgment. The Bauers claimed that Missouri law governed the "stacking" issue due to the "subject to the law of the state of the occurrence" language in the policies, and that under Missouri law, they were entitled to "stack" their uninsured motorist policy limits. The Bauers also argued that any offset for amounts paid on behalf of Ms. Loeber should be taken against their total damages, not against Farmers' $200,000 liability limit.

On May 17, 2007, the court denied the Bauers' motion for summary judgment and granted Farmers' motion. The court found, based on a conflict of laws analysis under Sections 188 and 193 of the Restatement (Second) of Conflict of Laws,[2] that Kansas law governs the construction of the insurance policies. The court further found that Kansas law expressly prohibits stacking of uninsured motor vehicle coverage and that, absent stacking, the Loeber vehicle was not an uninsured or underinsured motor vehicle. Consequently, the court held, the Bauers were not entitled to compensation under their Farmers policies.

The Bauers appeal.

---

for an injury either from more than one policy [*e.g.,* separate policies on separate vehicles] or from multiple coverages provided for within a single policy [*e.g.,* one policy covering multiple vehicles]." *Williams v. Silvola,* 234 S.W.3d 396, 398 n. 4 (Mo.App.2007).

**2.** Section 188 provides for application of the "most significant relationship test," which "requires the balancing of several factors to

determine which state has the most significant relationship to the action." *Superior Equip. Co. v. Md. Cas. Co.,* 986 S.W.2d 477, 480 (Mo.App.1999). Section 193 provides that in the context of a fire, surety, or casualty insurance contract, the most important factor is the state which the parties understood was to be the principal location of the insured risk. *Id.* at 480–81.

## Standard of Review

The grant of summary judgment is an issue of law that the appellate court reviews de novo. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). In considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We apply the same criteria for testing the propriety of summary judgment on appeal as those the trial court uses to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and no genuine issue of material fact exists. *Id.* at 378. The interpretation of an insurance policy also is a question of law, subject to de novo review. *Seeck*, 212 S.W.3d at 132. In construing the terms of an insurance policy, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance," and we resolve ambiguities in favor of the insured. *Id.*

## Discussion

After the summary judgment briefing and hearing in this case, but before the trial court issued its decision in the case, this court decided *Williams v. Silvola*, 234 S.W.3d 396 (Mo.App.2007). Six months later, the decision in *Silvola* became final when the Supreme Court denied transfer. Construing the same Farmers' policy language in the context of uninsured motorist coverage involving an accident in Missouri, *Silvola* held that the Kansas claimant in that case was entitled to stack the coverages from multiple policies as to an accident that occurred in Missouri. *Id.* at 397. The Bauers rightfully seize upon the decision in *Silvola* as accurately declaring the

law, and Farmers seeks to distinguish *Silvola*, and to bring some additional arguments to bear on the analysis.

The Bauers appeal the decision of the trial court in this case that Kansas law applies and that, therefore, they could not stack coverages from two separate policies. Relying on *Silvola*, they contend that the "subject to the law of the state of the occurrence" language mandates application of Missouri law and, thus, overrides the "anti-stacking" language in the statutory provision. In other words, they say the anti-stacking provision of the policy is irrelevant if the law of the state of the occurrence (Missouri) allows stacking.

Missouri law permits stacking of uninsured motor vehicle coverage. *Silvola*, 234 S.W.3d at 399. Missouri law requires all automobile insurance policies to include uninsured motorist coverage. *Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 313 (Mo.App.1999) (*citing* section 379.203, RSMo). Missouri law typically allows construction of policies in such a way that multiple uninsured motorist coverages may be stacked. *Id.* Provisions in policies that purport to prohibit stacking of such coverages violate the public policy reflected in 379.203. *Krombach*, 827 S.W.2d at 212. Also, Missouri allows the stacking of *underinsured* motorist coverage where an insurance policy treats underinsured and uninsured coverage the same. *Id.*

Farmers argues that the trial court correctly found, based on a proper conflict of laws analysis, that Kansas law applies. The policies were issued in Kansas, to Kansas residents, for vehicles titled, registered, and garaged in Kansas. Kansas law strictly prohibits stacking of uninsured and underinsured motorist coverages, regardless of whether the policy fails to specify a restriction against stacking. *See Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 261

Kan. 711, 933 P.2d 748, 756 (1997) (injury victim insured under three separate State Farm policies that contained no anti-stacking language was still precluded from stacking underinsured coverage by K.S.A 40–284(d)); (K.S.A. 40–284(d)). Thus, Farmer says, the court was correct in finding that Ms. Loeber was not an underinsured motorist, because her liability limits are not less than the Bauers' *unstacked* underinsured limits. Farmers points to other policy provisions that conflict with the Bauers' interpretation of the "subject to" language as permitting stacking.[3] Farmers says these provisions show that the policies clearly prohibit stacking of coverages and that Kansas' anti-stacking law applies. Farmers does not ask this court to overrule its decision in *Silvola,* but the practical effect of the foregoing arguments would, in our view, amount to an overruling of *Silvola.*

■ The Bauers contend, based on *Silvola,* that to the extent that any other policy provisions contradict or are inconsistent with the "subject to" provision, the contracts are ambiguous and, accordingly, must be construed in their favor. *See Seeck,* 212 S.W.3d at 132 (ambiguities in an insurance contract are construed in favor of the insured and against the insurer). Whether an insurance policy is ambiguous is a question of law. *Gavan v. Bitumi-*

*nous Cas. Corp.,* 242 S.W.3d 718, 720 (Mo. banc 2008).

In *Silvola,* the insured, a Kansas resident, was driving her sister's vehicle in Missouri when an accident was caused by an uninsured motorist. 24 S.W.3d at 398. The vehicle the insured was driving was licensed and registered in Missouri. *Id.* The insured brought a claim for uninsured motorist benefits, seeking to stack coverage on seven Farmers policies. *Id.* The insured had purchased the policies in Kansas for vehicles that were garaged in Kansas. *Id.* Those Farmers policies contained precisely the same "subject to the law of the state of the occurrence" provision that is at issue here. *See id.* at 397. The insured claimed, based on the "subject to the law of the state of the occurrence" provision, that Missouri law governed whether the policies could be stacked because the accident occurred in Missouri. *Id.* at 400.

The trial court found that this language was ambiguous. *Id.* Construing the ambiguities in the insured's favor, the trial court found that Missouri law applied and that the insured, therefore, was entitled to stack the uninsured coverages. *Id.* Farmers appealed. On appeal, Farmers raised some of the same arguments that it uses here to defend the trial court's ruling. *See id.* at 397. This court rejected those

---

**3.** In Part II—Uninsured Motorist, Other Insurance, both policies state:
    1. Coverage for losses caused by an underinsured motor vehicle shall be limited to the difference between the underinsured motorist coverage limits provided in this part and the coverage limits provided in any applicable bodily injury liability bond or policy available to any party held liable for the accident.
    . . . .
    4. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total

amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.
Under Part V—Conditions, each policy states at Paragraph 6, Two or More Cars Insured: With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

arguments and affirmed the trial court's judgment. *Id.* at 397–98.

This court's ruling in *Silvola* hinged on its analysis of the same "subject to the law of the state of the occurrence" language that is at issue here. The *Silvola* court concluded that, though the policy recited that it was a Kansas policy and that the policy was to be construed under Kansas law, the language was ambiguous as to the insured's right, when the accident occurs in a state that allows stacking, to stack uninsured motorist coverage. *Id.* at 403–04. As in this case, the policy purported, in various places, to prohibit stacking. *Id.* at 402. Also, the policy expressly required conformity to Kansas law where any provisions conflicted with such laws.[4] *Id.* The court considered these provisions, along with the "subject to the law of the state of the occurrence" language, and found that the conflicting clauses within the policy were irreconcilable and impossible to harmonize. *Id.* at 403. The fact that the "subject to" language conflicted with the policy's other anti-stacking language "not only creates an ambiguity," the court found, "but a reasonable lay person might . . . think the way the conflict is resolved is that the particular sentence overrides such [other] conflicting language" when the accident occurs in a state other than Kansas. *Id.* at 404.

The *Silvola* court noted that the substantive laws of Missouri and Kansas are "virtually identical" with regard to determining whether an insurance policy is ambiguous, and further noted that both states treat ambiguities in an insurance policy the same, *i.e.,* they must be construed in favor of the insured. *Id.* at 399. Therefore, said the court, it saw no reason to apply a conflict of laws analysis to the matter of contract construction.

■ Rather than attack *Silvola* head-on, Farmers contends that *Silvola* is distinguishable and does not govern this case because *Silvola* did not deal with every argument that should have been made in behalf of Farmers. In particular, Farmers contends that this court in *Silvola* failed to address the argument that, even if the policy is ambiguous, the only effect of the ambiguity is to determine the construction of the policy in a way that is more favorable to the insured—that is, to apply the law of the state of the accident (Missouri). Farmers argues that the effect of the ambiguity is only to establish what the parties' choice of law was; it still does not answer the question, under a conflict of laws analysis, as to whether that choice of law will be honored and enforced by the court. Farmers seeks to remind us that parties do not always have a free-ranging right to adopt the law of whatever state they wish, when there are fundamental state policies affected thereby.

To offer a rather far-fetched hypothetical in an effort to clarify Farmers' argument, let us imagine that Kansas had by constitutional provision enshrined a fundamental policy that the prevailing party in any contract litigation must be allowed to recover reasonable attorney's fees from the non-prevailing party. Let us imagine that, in order to try to get around that policy, Farmers had issued policies in Kansas that specified that when it comes to claims of uninsured and underinsured motorist coverage, North Dakota law would apply to any rights of recovery under the policy. The courts of the forum state (whether Kansas, Missouri, or somewhere else), in determining whether to apply

---

4. This policy contains a similar provision in Part V—Conditions, at paragraph 2, Changes: "Policy terms which conflict with laws of Kansas are hereby amended to conform to such laws."

North Dakota law, would seek to implement legal principles like those expressed in the Restatement (Second) of Conflict of Laws, section 187, which states:

(2) The law of the state chosen by the parties [*e.g.,* North Dakota] to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not [under Kansas law] have resolved by an explicit provision in their agreement directed to that issue [*i.e.,* even if they could not have legally specified, contrary to Kansas law, that each party will pay its own attorney's fees], *unless* either

(a) the chosen state [North Dakota] has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, [in which case North Dakota law will *not* be applied], *or*

(b) application of the law of the chosen state [North Dakota] would be contrary to a fundamental policy of a state [Kansas] which has a materially greater interest than the chosen state [North Dakota] in the determination of the particular issue and which, under the rule of § 188, would be the [default] state of the applicable law [Kansas] in the absence of an effective choice of law by the parties [in which case North Dakota law will *not* be applied].

(Emphasis added.) Section 187, thus, purports to allow parties to choose the law of a state other than the default state, but (generally speaking) it purports to place limits on the enforcement of such provisions where there is no legitimate connection to the state chosen, or where enforcement would conflict with a fundamental policy of the state having the greatest interest in the litigation.

Farmers wishes to invoke section 187 so that it can argue, despite *Silvola,* that to apply Missouri law here would be nonsensical because Missouri has nothing to do with the matter, and because to do so would conflict with a fundamental policy of the State of Kansas, which has a "materially greater interest" in the litigation. Farmers states that Missouri has no "substantial relationship to the parties or to the transaction" (but fails to argue that there is "no other reasonable basis for the parties' choice"). According to Farmers, the parties in this case could not validly have provided in the policy that underinsured motorist coverage would be stacked (because arguably K.S.A. 40–284(d) would have invalidated such a provision). Farmers then points out that under section 187 the parties could have adopted the law of the state of the occurrence *only as long as* (1) the state chosen had some substantial relationship to "the parties or the transaction," *and* as long as (2) the law of the state in question is not contrary to a "fundamental policy" of the default state (Kansas, the state with a materially greater interest in the issue). Because, says Farmers, neither of these provisos are applicable here, the court cannot, under 187, apply Missouri stacking law.

It is true that this court, in *Silvola,* did not address any argument based on conflicts of law principles, whether under section 187, 188, or 193 of the Restatement.[5] *See Silvola,* 234 S.W.3d at 401 n. 8. According to Farmers, the argument with regard to section 187 would have resulted in application of Kansas law—and thus

---

5. The *Silvola* court stated at footnote 9:

In its first point on appeal, ... Farmers makes additional arguments relevant to a conflict of law analysis. *Finding no conflict*

*of law analysis required in this case,* however, this court need not address Farmers' additional arguments.
234 S.W.3d at 404 n. 9 (emphasis added).

reversal—had it been ruled upon. We disagree.

We do not see that, whether the court had addressed the argument or not, it would have changed the result in *Silvola*. First, assuming that section 187 is applicable in Missouri in this context and in the context where the parties have chosen a foreign state's law for a very limited purpose and not for the construction of the entire contract, we note that it is not arbitrary or unreasonable for the parties to say in an insurance contract that, although generally the uninsured and underinsured motorist coverage cannot be stacked, this matter is "subject to the law of the state of the occurrence." Farmers fails to show that section 187(2)(a) precludes the parties from choosing the law of the state of the occurrence. That is because it appears there is "a reasonable basis" for the parties' choice.

■ Accordingly, we conclude the application of Missouri law is not disqualified by section 187(2)(a). And because the application of Missouri law would not be precluded by the "reasonable basis" part of the analysis, we could decline to apply the law of the state of the occurrence only if doing so would conflict with a "fundamental policy" of Kansas.

Farmers fails to demonstrate that the anti-stacking policy of Kansas is so loaded with essential public policy concerns that it can be called "fundamental." We are aware that there are various positions on the issue of stacking, reflected in court decisions and legislative enactments that

have wrestled with such issues as whether uninsured and underinsured provisions are intended to provide "gap" insurance or "excess" insurance.[6] The fact that Kansas adopted a policy via the legislative route does not necessarily mean that the policy is a "fundamental policy." To think otherwise would be to dilute the commonly understood meaning of the word "fundamental," which we all know is not synonymous with "important." In *Eidemiller*, 933 P.2d at 756, the Kansas Supreme Court made clear that the anti-stacking statute expresses a definitive legislative intention to prevent stacking of coverages, even when the policy itself contains no anti-stacking language; but the court did not use the term "fundamental" or words to that effect in discussing the policy. Nor does Farmers demonstrate that the anti-stacking policy is referred to anywhere in Kansas jurisprudence as being "fundamental." The Kansas courts enforce the statute but do not consider the statute to be a remedial measure deserving liberal construction. *See, e.g., Brown v. Farmers Ins. Co.*, 31 Kan.App.2d 419, 65 P.3d 1063, 1067 (2003) (commenting on the uninsured motorist and underinsured motorist statutes, in contrast to the anti-stacking statute, as being "remedial" and to be liberally construed, although though the court enforced the clear language of the anti-stacking statute). Even if Kansas regards itself as having important interests related to the cost of premiums for uninsured and underinsured coverages, we fail to see a demonstration that such interests are considered fundamental.[7]

---

6. An interesting discussion of matters pertinent to judicial policy can be found in *Montano v. Allstate Indemnity. Co.*, 135 N.M. 681, 92 P.3d 1255 (2004). For a sample of the insurer's perspective, see *NAMIC Asks Governor to Veto Uninsured/Underinsured Motorist Coverage Legislation*, http://www.namic.org/newsreleases07/070521nr1.asp.

7. In Comment g. to section 187, the Restatement commentators give a variety of comments as to ways of understanding when a policy is "fundamental." Contrary to what Farmers suggests, Comment g. does not contain notions that support Farmers' position that our courts should regard the anti-stack-

The result of our analysis of the two restrictions in section 187 against applying the law chosen by the parties is that section 187, far from dictating that Kansas anti-stacking law be applied, would appear, when combined with *Silvola*, to dictate affirmatively the application of Missouri law, the state of the "occurrence."

Not to be deterred, however, Farmers also argues that *Silvola* is distinguishable, because, unlike this case, it involved an "uninsured," as opposed to an "underinsured," motorist. But Missouri allows the stacking of *underinsured* motorist coverage where an insurance policy treats underinsured and uninsured coverage the same. *See Krombach*, 827 S.W.2d at 212. Here, the policy specifically states that uninsured motorist coverage *includes* underinsured motorist protection. There is no separate definition for an "underinsured motor vehicle." Instead, the provision that would actually define an *underinsured* motor vehicle—a vehicle that is "[i]nsured by a ... liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of liability for this coverage"—falls under the *uninsured* motor vehicle definitions. There is no separate premium or limit of liability listed on the declarations page for underinsured coverage. *See Am. Econ. Ins. Co. v. Cornejo*, 866 S.W.2d 174, 177–78 (Mo.App.1993). Thus, these policies lump

uninsured and underinsured motorist coverage together and treat them the same.[8]

This stacking results in Ms. Loeber qualifying as an underinsured motorist under the policy definition. Ms. Loeber's liability coverage limit of $100,000 is less than the Bauers' *stacked* limits of liability for uninsured/underinsured motor vehicle coverage, which is $200,000. In other cases where the policies contained similar definitions, courts have held that the third-party tortfeasor qualifies as an underinsured motorist as a result of stacking. *See, e.g., Cornejo*, 866 S.W.2d at 178; *Keating v. Gavrilovici*, 861 S.W.2d 205, 207–08 (Mo.App.1993).

This court's ruling in *Silvola* is dispositive of this case in view of the fact that 1) it is not unreasonable for the parties to agree in the policy to make the issue of stacking subject to the law of "the state of the occurrence"; and 2) Kansas does not have a "fundamental" policy against stacking uninsured and underinsured coverages that must be honored under conflict of law principles. Like the insured in *Silvola*, the Bauers receive the benefit of the determination that Missouri law applies and, thus, stacking of their underinsured coverages is allowed. The trial court erred in granting summary judgment to Farmers on the basis that Kansas law applied and,

ing policy of the Kansas legislature as a fundamental policy.

8.  Farmers mentions a provision in the policy under Part II—Uninsured Motorist, Limits of Liability, which states: "4. The limits of liability for this coverage will be applied separately to injuries caused by an uninsured motor vehicle and injuries caused by an underinsured motor vehicle." They cite it as an example of how the policies make a distinction between damages caused by an uninsured vehicle and those caused by an underinsured vehicle. The meaning of this provision is not entirely clear and is not explained by Farmers. Per-

haps it means that the insured's limits of liability for an uninsured motorist are not reduced by the limits of liability for an underinsured motorist, or vice versa. For example, in the situation where the insured is involved in a three-or-more vehicle accident and among the other drivers is both an uninsured and an underinsured motorist, the limits of liability as to one does not reduce the limits of liability as to the other. We do not believe the provision indicates that the policy does not treat uninsured and underinsured the same.

thus, stacking was not allowed. The judgment must be reversed.

### Conclusion

The trial court's grant of summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.